468 A.2d 1115

**COMMONWEALTH of Pennsylvania**

v.

**Aaron MINES, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Dec. 9, 1983.

530

Thomas Hurd, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This case comes to us on remand from the Supreme Court. We had ordered the defendant discharged for a violation of Rule 1100. 282 Pa.Super. 157, 422 A.2d 876. The Supreme Court, finding no Rule 1100 violation, reversed and remanded the case to this court to decide the remaining issue not previously decided. *Commonwealth v. Mines*, 502 Pa. 41, 463 A.2d 999 (1983). This issue is whether the trial court improperly restricted the cross-examination of a Commonwealth witness. We hold that the court did not, and therefore affirm.

Appellant was convicted of robbery and conspiracy arising out of an armed robbery. A principal Commonwealth witness, Keith Summers, was a juvenile. Summers testified that on the evening of September 26, 1977, as he was

leaving a grocery store, he was robbed by two men of a few dollars and his wristwatch. He identified appellant as one of the two men. Several people outside the store, playing a game of craps, also were robbed. Richard Pugh, Summer's cousin, testified that he witnessed the robbery of the people outside the store, but he could not identify appellant. Appellant argues that the trial court should have allowed him to impeach Summer's credibility by introducing his juvenile record.

Generally, a juvenile record may not be used for impeachment purposes. 42 Pa.C.S.A. § 6354(b) provides:

> **(b) Effect in subsequent judicial matters.**—The disposition of a child under this chapter may not be used against him in any proceeding in any court other than at a subsequent juvenile hearing, whether before or after reaching majority, except:
>
> (1) in dispositional proceedings after conviction of a felony **for the purposes of a presentence investigation and report; or**
>
> (2) if relevant, where he has put his reputation or character in issue in a civil matter.

See also, Commonwealth v. Katchmer, 453 Pa. 461, 309 A.2d 591 (1973). However, in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the state's interest in protecting the confidentiality of a juvenile's record must yield to the defendant's constitutional right to cross-examine an adverse witness. The defendant in Davis was convicted of burglarizing a tavern and removing a safe containing over a thousand dollars in cash and checks. The safe was discovered near the home of a prosecution witness. The witness, a juvenile, testified that he had seen the defendant near the scene where the safe was discovered just hours before the discovery. Defense counsel sought to cross-examine the witness regarding his juvenile adjudications for burglary. The defense theorized that the witness feared that he would himself be suspected of the burglary of the tavern and that he may "have made a hasty and faulty identification of [the

defendant] to shift suspicion away from himself [and also] might have been subject to undue pressure from the police and made his identification under fear of possible probation revocation." *Id.* at 311, 94 S.Ct. at 1108. The Court held that such cross-examination should have been permitted, explaining: "The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as a probationer, ... as well as of [the witness's] possible concern that he might be a suspect in the investigation." *Id.* at 318, 94 S.Ct. 1111 (citation and footnote omitted). It also appeared that when defense counsel asked the witness whether he had ever previously been interrogated by the police, the witness answered that he had not been. The Court stated:

Since it is probable that [the witness] underwent some questioning by police when he was arrested for the burglaries on which his juvenile adjudication of delinquency rested, the answer can be regarded as highly suspect at the very least. The witness was in effect asserting, under protection of the trial court's ruling, a right to give a questionably truthful answer to a cross-examiner pursuing a relevant line of inquiry; it is doubtful whether the bold "No" answer would have been given by [the witness] absent a belief that he was shielded from traditional cross-examination. It would be difficult to conceive of a situation more clearly illustrating the need for cross-examination.

*Id.* at 314, 94 S.Ct. at 1109.

We have concluded that this case is not controlled by *Davis*. Here, defense counsel

wished to show that Summers may have lost his watch and money in the crap game and was fabricating the robbery to conceal this fact from his parents. Defense counsel further represented that Summers may have feared that his parents, who had filed incorrigibility petitions against him in the past, would report his gambling

activities to his probation officer, and that his probation would be revoked.

Brief for appellant at 16; *and see* N.T. at 165–167. But nothing in the record supports this theory. There is no evidence that Summers was playing in the crap game. In fact, there was testimony that he was not. Summers himself testified that he was not playing in the game but was leaving the grocery store after having purchased a loaf of bread, N.T. 115–116, and Pugh also testified that Summers was not playing in the game but was leaving the store when the robbery occurred, N.T. 177, 185. There is no evidence that Summers feared that he might himself be suspected of the robbery. Nor does it appear that he was pressured into identifying appellant for fear that his probation would be revoked; to the contrary, he voluntarily reported the incident to the police.

As Justice Stewart in his concurring opinion in *Davis* states:

[T]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions. *Id.* at 321, 94 S.Ct. at 1112.

*See also, Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978) (facts must bring case within rationale of *Davis* to permit use of juvenile record for impeachment). We agree with the Second Circuit's interpretation of *Davis,* which the trial court relied on:

We do not believe that the Court in *Davis* meant to sanction speculative expeditions into areas only tangentially related to the facts in issue in the hope that some basis for implying an ulterior motive might be found. *United States v. Ong,* 541 F.2d 331, 342 (2d Cir.1976).

In our opinion, appellant's theory was too speculative. We therefore conclude that the trial court properly refused to permit the use of the witness's juvenile record to show bias.

Judgment of sentence affirmed.