591 A.2d 278

COMMONWEALTH of Pennsylvania, Appellee,

v.

Craig MURPHY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 23, 1990.

Decided May 8, 1991.

310

Norris E. Gelman, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Hugh Burns, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION OF THE COURT

LARSEN, Justice.

On July 21, 1986, Appellant, Craig Murphy, was convicted by a jury of murder of the first degree and possession of an instrument of crime. After the verdict was announced, a sentencing hearing was held pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711, and the jury unanimously sentenced Appellant to death. Appellant filed post trial motions which were denied by the trial court. This direct appeal followed.

The record reveals that on May 11, 1981, Appellant approached Mary Magee, regarding the whereabouts of Magee's boyfriend, Steven Brown. Brown was an eyewitness to the murder of one Raymond Gambrel, and had given a detailed statement to the police identifying Appellant as the gunman. Brown had recently returned to Philadelphia from Maine where he sought refuge at the home of his brother due to threats leveled against him and his family by Appellant.

After having been in Philadelphia for one week, Brown was shot on May 13, 1981, in front of a residence at 3112 North 15th Street, Philadelphia, Pennsylvania. The police arrived at the scene at 10:02 a.m. and discovered the victim bleeding profusely from the chest and groin. Brown was transported to the hospital and was pronounced dead that

same day at 3:00 p.m. The cause of death was multiple gunshot wounds to the trunk, right thigh and groin.

Appellant was not charged with the murder of Brown until 1985 when the police re-interviewed two children, Maurice Graves and Wanda Wilson, who in May of 1981 gave vague descriptions of the gunman but did not reveal his identity. Upon being re-interviewed, Graves told the police that he heard gunshots and saw Appellant running away from the scene of the crime. Wilson told the police that she saw Appellant shoot Brown as she sat in her living room in a house across the street from the scene of the crime. Graves and Wilson testified at Appellant's trial on July 16, 1986, and identified Appellant as the gunman. Graves, who was eight years old at the time of the murder and Wilson, then nine, testified that fear of injury or death prevented them from identifying Appellant when they were first interviewed in May of 1981. Wilson was on juvenile probation at the time of trial. Graves had just completed a term of juvenile probation prior to trial.

In this appeal Appellant argues inter alia, that defense counsel was ineffective in failing to impeach the credibility of Graves and Wilson through cross-examination for bias based upon their juvenile probationary status. The standard for reviewing a claim of ineffective assistance of counsel is whether the underlying claim is of arguable merit, whether defense counsel's performance was reasonable and whether the defendant was prejudiced. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that "the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile delinquent". *Id.* at 309, 94 S.Ct. at 1107, 39 L.Ed.2d at 349. Relying on *Davis*, this Court in *Commonwealth v. Simmons*, 521 Pa. 218, 555 A.2d 860 (1989), held that "the juvenile record of a prosecution witness must be

made available to the defense for the purpose of allowing the defense to determine whether there was anything in the witness's [sic] juvenile record which would indicate that the witness might be biased against the defendant and in favor of the prosecution." *Id.,* 521 Pa. at 222, 555 A.2d at 862. *See also Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978).

In this case, defense counsel was abysmally ignorant of the law regarding the proper method of cross-examining a child witness who is on juvenile probation. At a conference in chambers the trial judge and both counsel discussed the scope of allowable cross-examination of the two juvenile witnesses:

THE COURT: Getting into Davis versus Alaska.

[PROSECUTOR]: Your Honor, upon reading Davis versus Alaska, I put this before the Court that the witness, Maurice Graves, has just completed a term of probation involving the theft of some coins from a laundromat. This matter—

THE COURT: How old is he?

[PROSECUTOR]: He is 12 or 13.

This matter in no way has any relationship to the Commonwealth's handling of this prosecution. We made no concessions. To be frank about it, my first information concerning a juvenile record was yesterday.

It is our position, reading Davis versus Alaska, that counsel has the ability to cross-examine this witness absent going into a juvenile record that is remote or had no bearing whatsoever on this witness coming forth. There is nothing that the Commonwealth can do for a juvenile being handled in Juvenile Court.

THE COURT: The one probation has expired, anyhow?

[PROSECUTOR]: Yes, that's Maurice Graves.

THE COURT: How about the other?

[PROSECUTOR]: Wanda Wilson is currently on probation.

THE COURT: Her age?

[DEFENSE COUNSEL]: 15, Your Honor.

[PROSECUTOR]: And I had no knowledge of that until yesterday, for that had no bearing.

THE COURT: What was her adjudication?

[PROSECUTOR]: Receiving stolen property. It has to do with her returning a purse from a purse snatch.

THE COURT: All right.

[PROSECUTOR]: And I had no discussion with that witness, nor was any favorable treatment given to that witness by the Commonwealth. The overriding concern of these witnesses, notwithstanding whatever problems they had with the Juvenile Court, is a latent fear of the defendant and defendant's reputation in this case.

[DEFENSE COUNSEL]: I would submit that's very latent, it's like five years but Your Honor, the only reason I wanted to include this is because the trouble the kids were involved in was, had to do with, theft which I think is crimen falsi.

T.T., July 16, 1986 at pp. 2.7–2.9.

 In *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973) this Court held that juvenile adjudications cannot be used for crimen falsi impeachment. Defense counsel erroneously sought to impeach the credibility of the witnesses on impermissible grounds while at the same time, due to ignorance, failed to impeach their credibility on legitimate grounds—to show bias of the witness based upon his or her juvenile probationary status. Although Appellant's present *Davis* argument as to Graves is without merit because Graves' juvenile probation had expired before trial,[1] defense counsel was ineffective in failing to cross-examine Wilson on the basis of her juvenile probationary status.

1. The record in this case shows that Graves "had just completed a term of probation." T.T. July 16, 1986 at p. 2.7. It is not clear whether Graves was on probation the second time he was interviewed by the police when he identified Appellant as the man he saw running away from the scene of the crime. If it develops that Graves was on probation at that time, he would be subject to a *Davis* cross-examination.

We can perceive of no reasonable basis for counsel's failure to cross-examine Wilson on the basis of her then existing juvenile probation. In this case defense counsel attacked Wilson's credibility under the theory of mistaken identity by questioning her ability to view the scene of the crime, her age at the time of the crime, and her failure to identify Appellant immediately after the crime occurred. The Commonwealth concedes that it was also possible to cross-examine Wilson on the basis of bias but argues that both methods of impeachment are inconsistent with each other because the latter theory suggests conscious deception and conflicts with the idea that the witness is in error. These two methods of cross-examination are not inconsistent. In fact, it is likely that the bias theory could have bolstered the theory that Wilson mistakenly identified Appellant as the gunman.

Appellant was clearly prejudiced by counsel's performance. Wilson was the only eyewitness to the crime and her testimony was crucial to the Commonwealth's case. Although the murder of Brown occurred in 1981, it was only after Wilson was re-interviewed and gave additional information to the police in 1985 that the Commonwealth was able to bring charges against the Appellant. It was incumbent upon defense counsel to bring to the jury's attention the possibility that Wilson had a motive for testifying against the defendant, whether based upon a formal agreement with the prosecution or a subjective belief that she would receive favorable treatment with regard to her juvenile probation.[2] If defense counsel was able to show that

---

2. This court has consistently stated that it will not consider claims of ineffective assistance of counsel in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981). Thus, in *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989) we held that where defense counsel fails to call a particular witness, the defendant must show that the testimony of the absent witness would have been beneficial in proving the asserted defense in order to establish ineffectiveness. Regarding the present claim, however, Appellant need not show that a deal was struck between the Commonwealth and Wilson in order to establish ineffectiveness. As the United States Supreme Court in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) stated,

Wilson was biased, it would have, in all probability, affected the outcome of the proceeding.

Accordingly, the judgment of sentence of the Philadelphia Court of Common Pleas is reversed and the case is remanded for a new trial.

McDERMOTT, J., did not participate in the consideration or decision of this case.

"[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.... We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination."
*Id.* at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353, 354. In the within case the Appellant was entitled to have the defense theory of bias presented to the jury via cross-examination of the critical witness.