J. S62023/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
                                :
                                :
        v.                      :
                                :
JONATHAN LANDRON                :
                                :
        APPELLANT               :    No. 2154 MDA 2015

Appeal from the PCRA Order November 18, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000559-2013

BEFORE: GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:              **FILED SEPTEMBER 26, 2016**

Appellant, Jonathan Landron, appeals from the November 18, 2015

Order, entered in the Berks County Court of Common Pleas, dismissing his

first Petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

§§ 9541-46, without an evidentiary hearing.  After careful review, we affirm.

The PCRA court summarized the facts as follows:

> Appellant and Alexander Cruz-Cintron, then residents at
> 1230 Spring Street in the City of Reading, were looking for
> "someone to burn"—that is, someone to "rip off [or] steal
> from."  In November 2012, Cruz-Cintron approached his
> longtime friend, Danielle Mojica [("Mojica")] and suggested
> that she could help them "burn" Raymond Hiester.  Cruz-
> Cintron knew that Hiester and Mojica sometimes smoked
> marijuana together and that Heister bought cigarettes for
> Mojica, gave her money, and had promised to buy her a
> tablet.  Mojica at first told Cruz-Cintron and Appellant she
> didn't want to steal from Hiester—she worried that doing
> so would jeopardize his willingness to buy her gifts,
> including the tablet.

A few days after Cruz-Cintron first proposed the idea, he and Appellant repeated the idea of stealing from Hiester. Mojica again said she was not interested. But on November 26, 2012, Mojica learned that the plans to victimize Hiester were already in motion. Appellant and Cruz-Cintron showed Mojica a black handgun which, she was told, would only be used to scare Hiester—it "wasn't to be fired or anything like that." Two days later, four individuals from New York—a Hispanic female known as "Kay-Kay" and three males, one black and two Hispanic—arrived in Reading to assist in the operation.

On the morning of November 28, Mojica received a phone call. On the other end of the line she could hear Appellant, Cruz-Cintron, and Kay-Kay, who informed her that the plan was going forward but assured her nothing "serious" was going to happen. They picked Mojica up and brought her back to Cruz-Cintron['s] and Appellant's residence at 1230 Spring Street in Reading. Cruz-Cintron and Kay-Kay persuaded Mojica to call Hiester and arrange to go to his house, while Appellant continued to assure Mojica that "everything was going to be fine."

Mojica made contact with Hiester around 11:00 a.m. She sent him a series of test messages, trying to persuade him to allow her to come over:

> I kept asking him if I could go over to his house, if I could chill with him. I was trying to smoke. I was telling him that I was going through it, I was trying to smoke, that I didn't want to chill long, you know, stuff like that.

N.T. 6/11/13, at 88. Hiester said it was not a good time, but Mojica persisted, and Hiester agreed to allow her to come to his house.

After Mojica made plans with Hiester, Kay-Kay drove her to Hiester's house, located in the 500 block of South 18th Street in Reading. Kay-Kay left, and Mojica went inside, where she and Hiester began smoking marijuana and talking. After a few minutes, Mojica told Hiester that she had left her cigarettes in the car she arrived in, and that she also wanted to smoke more marijuana. Hiester went

out to purchase some cigarettes and blunt paper from a corner store nearby.  Hiester left through the back door, and Mojica remained at the house.

As soon as Hiester left, Mojica called Cruz-Cintron to let him know that Hiester was gone; concurrently, the three men from New York arrived at Hiester's home in Appellant's car, a gold Mercedes sedan.  After entering the home through the front door, they began looking for items to steal.  They grabbed Mojica, taped her to a chair, and placed tape over her mouth.  Hiester soon returned to his home, re-entering through the back door.  He was met in the kitchen by a black male who was holding a black-and-silver handgun.  The gunman told Hiester to "get on the ground" as soon as he walked into the room.  Hiester hesitated, and the gunman approached him, put the gun to his chest and tried to push him to the ground.  Hiester resisted, and the gunman shot him in the chest.

Hiester did not lose consciousness but attempted to use the phone in the kitchen to call 9-1-1.  Meanwhile, the gunman resumed digging through the contents of Hiester's desk.  At that time Hiester also became aware of a second male in the home, who was descending the stairs from the second floor while trying to fend off an attack by Hiester's Rottweiler.  Fearing that the gunman would shoot the dog—or shoot Hiester again—Hiester called off the dog and rushed out the back door to seek help.

Hiester found a neighbor and told him he had been shot by unknown individuals who were attempting to rob him inside his house.  He then lay down in front of the neighbor's house to wait for the ambulance.  While he was waiting for the ambulance, he saw the two males run out the front door of his house, enter a "small silver car," and drive away.  Police and emergency medical personnel arrived thereafter, where they found Hiester outside.  Hiester was taken to the hospital to receive treatment for his gunshot wound.  He was released from the hospital after only six hours.  Hiester's neighbor untied Mojica from the kitchen chair, and she was questioned throughout the day by police.  Afterwards, Mojica sought out Appellant and Cruz-Cintron.  Cruz-Cintron returned Mojica's phone, which had been taken while she was tied up at Hiester's

house. Appellant and Cruz-Cintron questioned Mojica about her statements to the police, but after she assured them they had not been implicated, they went to dinner together and then went bowling.

After Hiester was discharged from the hospital, he began to develop fluid buildup in his chest, which had to be drained. Surgery was required around the area of the bullet hole, while a pump drained fluid from the area. Hiester, a roofing and home improvement contractor, returned to work after about three weeks of recovery. Hiester discovered that an iPod Touch, a new Samsung Galaxy II cell phone, and approximately three ounces of marijuana had been taken from his home.

Trial Ct. Op., 1/14/16, at 2-4 (some citations omitted).

Following a bench trial held on June 11, 2013, the trial court convicted Appellant of three counts of Robbery,[1] Burglary,[2] Theft by Unlawful Taking,[3] Criminal Trespass,[4] and Conspiracy[5] to commit each of the foregoing offenses.

The trial court sentenced Appellant on September 19, 2013, to an aggregate sentence of eight to forty years' imprisonment. Appellant filed a post-sentence motion seeking to modify his sentence on September 29, 2013. The trial court denied the motion to modify sentence on October 2,

_____

[1] 18 Pa.C.S. § 3701(a)(1)(ii); 18 Pa.C.S. § 3701(a)(1)(iii); and 18 Pa.C.S. § 3701(a)(1)(iv).

[2] 18 Pa.C.S. § 3502(a)(1).

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3503(a)(1)(i).

[5] 18 Pa.C.S. § 903(a)(1).

2013. Appellant filed a timely appeal from his Judgment of Sentence on October 17, 2013. This Court affirmed Appellant's Judgment of Sentence on September 16, 2014. *See Commonwealth v. Landron*, NO. 1855 MDA 2013 (Pa. Super. filed September 16, 2014) (unpublished memorandum).

On July 6, 2015, Appellant filed a timely, counseled, first Petition seeking relief under the PCRA. The PCRA court sent Appellant a Notice pursuant to Pa.R.Crim.P. 907, indicating that his Petition would be dismissed as without merit. Appellant filed a "Petition in Response to Dismissal of PCRA Petition" on September 10, 2015. The PCRA court dismissed Appellant's Petition on November 18, 2015, without a hearing. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant claims on appeal that the trial court erred in denying his PCRA Petition because his trial counsel was ineffective for failing to cross-examine the Commonwealth's primary witness, Danielle Mojica, about whether she had entered into a plea agreement not to be charged as an accomplice and whether, as a result of such agreement, her testimony was biased. Appellant's Brief at 15-16. Appellant alleges that counsel's failure to effectively cross-examine Majoica "made it impossible to argue corrupt and polluted source under the theory of accomplice liability." *Id.* at 16.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise

free of legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). "The burden of demonstrating ineffectiveness rests on [A]ppellant." ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Champney***, 65 A.3d 386, 396 (Pa. 2013) (citation omitted).

With respect to Appellant's allegation of ineffectiveness of trial counsel, the PCRA court opined as follows:

> Appellant's legal claim has arguable merit because the pertinent witness, Danielle Mojica, was the only individual who could connect Appellant to the crime. Additionally, it is unlikely that trial counsel's failure to cross-examine

Mojica about her plea deal was the product of a reasoned trial strategy. Appellant cannot show, however, that he was prejudiced by trial counsel's inaction.

Appellant's PCRA petition cites **Commonwealth v. Murphy**[, 591 A.2d 278 (Pa. 1991)], in which defense counsel similarly failed to cross-examine a critical witness about potential bias. [ ] The Supreme Court wrote in **Murphy**:

> It was incumbent upon defense counsel to bring to the jury's attention the possibility that [the witness] had a motive for testifying against the defendant, whether based upon a formal agreement with the prosecution or a subjective belief that she would receive favorable treatment with regard to her juvenile probation. If defense counsel was able to show that [the witness] was biased, it would have, in all probability, affected the outcome of the proceeding.
>
> **Id.** at 280-281.

The instant case is distinguishable from **Murphy** because Appellant was convicted following a nonjury trial, rather than a jury trial. It was abundantly clear to this [c]ourt that Mojica had acted as an accomplice during this criminal episode. Accordingly, we are aware that her testimony was likely incentivized by some agreement with the Commonwealth. Similarly, since Mojica was an accomplice, this Court was well aware that she is a "corrupt and polluted source."[6] A jury of laypersons may not be privy to such considerations in the absence of effective cross-examination by a defense attorney; the same cannot be said of this [c]ourt. We were the finder of fact at Appellant's trial. Accordingly, we can state unequivocally that our verdict would not have changed if trial counsel had pursued the disputed line of cross-

---

[6] "It is well established that in any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." **Commonwealth v. Chmiel**, 639 A.2d 9, 13 (Pa. 1994) (citation omitted).

> examination. We analyzed Mojica's testimony with great caution, and we ultimately found it to be accurate and reliable.
>
> We also note that Mojica's credibility was otherwise impeached by Appellant's trial counsel and counsel for the codefendant, Alexander Cruz-Cintron. The cross-examination emphasized Mojica's role as an accomplice in the crime, in addition to the fact that she had initially given the police a different story.

Trial Ct. Op. at 5-6.

We agree with the trial court that Appellant presented an underlying claim of arguable merit, and that it is unlikely that trial counsel's decision not to cross-examine Mojica about whether she and the Commonwealth had entered into an agreement favorable to her in exchange for her testimony was the product of a reasoned trial strategy. However, Appellant has failed to demonstrate that, but for counsel's ineffectiveness, the outcome of his trial would have been different. Because Appellant has failed to establish all of the prongs of the ineffectiveness test as set forth in ***Fulton***, ***supra***, Appellant is not entitled to relief. ***See Champney***, 65 A.3d at 396. Accordingly, we affirm the Order of the PCRA court dismissing Appellant's PCRA Petition.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2016