J-A18032-19

2020 PA Super 138

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM ARRINGTON, | : | |
| | : | |
| Appellant | : | No. 1117 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 10, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002493-2017

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.:                    **FILED JUNE 09, 2020**

William Arrington ("Arrington") appeals from the judgment of sentence entered following his convictions of one count each of firearms not to be carried without a license, disregard traffic lane, failure to keep right, and possession of drug paraphernalia, and two counts each of possession of a controlled substance and possession with intent to deliver.[1] We affirm in part, reverse in part, and remand for further proceedings.

On October 25, 2016, Pittsburgh Police Officers Gino Macioce ("Officer Macioce") and Rob Connors ("Officer Connors") (collectively, "the officers") were on patrol in the Homewood neighborhood of Pittsburgh. At around 2:00 a.m., the officers observed Arrington's vehicle driving towards them in their lane of travel. Arrington's vehicle remained in the incorrect lane of travel for several seconds before returning to the correct side of the road. The officers

_____

[1] **See** 18 Pa.C.S.A. § 6106(a)(1); 75 Pa.C.S.A. §§ 3309(4), 3301(a); 35 P.S. §§ 780-113(a)(32), (a)(16), (a)(30).

suspected that Arrington was driving under the influence of drugs or alcohol and conducted a traffic stop.

When the officers approached Arrington's vehicle, they witnessed Arrington exhibit several signs of intoxication, and asked Arrington to step out of the vehicle. Arrington failed to immediately respond, and the officers removed Arrington from the vehicle, conducted a pat down search, and placed him in handcuffs.

Officer Connors supervised Arrington, at the rear of Arrington's vehicle, while Officer Macioce ran Arrington's name through the National Crime Information Center ("NCIC"). The NCIC search revealed that Arrington had a revoked concealed-carry permit. The officers asked Arrington if he was in possession of any weapons, which Arrington denied. Officer Macioce searched the vehicle's passenger compartment, and discovered a handgun in a closed shoe box that was sitting on the vehicle's back seat. Officer Macioce ended his search, and ran the handgun's serial number through the NCIC, which indicated that the weapon was stolen.

The officers placed Arrington under arrest, and conducted a second search of Arrington and the vehicle. Officer Connors discovered U.S. currency and a stamp bag of heroin in Arrington's pockets. Officer Macioce discovered 81 bags of heroin, U.S. currency, and a digital scale in the vehicle's center console, and four cell phones on the driver and passenger seats. A third Pittsburgh Police Officer arrived and transported Arrington to a hospital for a blood draw, which he refused.

Arrington filed a pre-trial suppression Motion, challenging the search of his vehicle, which the trial court denied. Following a non-jury trial, Arrington was found guilty of the above-mentioned offenses. The trial court sentenced Arrington to an aggregate term of fifteen months of probation. Arrington filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Arrington raises the following questions for our review:

I. Whether the police had probable cause of a [M]otor [V]ehicle [C]ode infraction to support initially stopping [] Arrington beyond the momentary and minor actions testified to?

II. The government searched [] Arrington's vehicle while he was handcuffed behind the vehicle, out of reach. Was the search supported by reasonable, articulable suspicion that [] Arrington was dangerous and may have gained immediate control of a weapon in his vehicle?

III. At the time police searched his vehicle incident to arrest, was [] Arrington unsecured and within reaching distance of the passenger compartment[,] or was it reasonable to believe the vehicle contained additional evidence of his possessing a firearm?

IV. Did the trial court err in denying [] Arrington's suppression [M]otion[,] because police conducted the search for criminal investigatory, rather than non-criminal inventory, purposes?

V. Given the momentary and minor nature of [] Arrington's violation of the [M]otor [V]ehicle [C]ode, was the evidence insufficient to prove his guilt beyond a reasonable doubt?

VI. Where a gun was found within a shoebox on the back seat, and drugs were found in the center console of a rental vehicle, was the evidence insufficient to prove [] Arrington possessed these items beyond a reasonable doubt[,] without any evidence of [] Arrington's knowledge of, or intent to possess, these items?

Brief for Appellant at 6-7 (issues renumbered).

- 3 -

Arrington's first four claims challenge the trial court's denial of his pre-trial Motion to suppress evidence.

> We review the trial court's denial of a motion to suppress to determine whether the record supports the trial court's factual findings and whether it reached its legal conclusions in error. If the record supports the trial court's findings of fact, we will reverse only if the trial court's legal conclusions are incorrect.

*Commonwealth v. Fleet*, 114 A.3d 840, 843 (Pa. Super. 2015) (citations and quotation marks omitted).

In his first claim, Arrington alleges that the officers lacked probable cause to stop his vehicle. *See* Brief for Appellant at 53-56. Citing *Commonwealth v. Garcia*, 859 A.2d 820 (Pa. Super. 2004), Arrington argues that his violation of the Motor Vehicle Code was "minor and momentary." Brief for Appellant at 55. Arrington directs us to Officer Macioce's testimony that Arrington's vehicle crossed the centerline for "seconds," and posed no safety hazard to other vehicles. *Id.* Arrington claims that he did not swerve, fishtail, or otherwise violate the Motor Vehicle Code, beyond momentarily crossing the centerline. *Id.* at 55-56.

Section 3301(a) of the Motor Vehicle Code provides, in relevant part, that "a vehicle shall be driven upon the right half of the roadway…." 75 Pa.C.S.A. § 3301(a). This Court has previously held that a police officer has probable cause to believe that Section 3301(a) has been violated where the officer witnesses a driver's vehicle cross the double-yellow centerline into the oncoming lane, and remain there for approximately 2-3 seconds, while another vehicle is approaching in the oncoming lane. *Commonwealth v.*

*Enick*, 70 A.3d 843, 847-48 (Pa. Super. 2013). *But see id.* at 848 (stating that "[o]ur analysis here does not foreclose the possibility that a momentary and minor violation of § 3301 might, in a different case, be insufficient to establish probable cause for a vehicle stop.").

Here, Officer Macioce testified that Arrington's vehicle crossed the double-yellow centerline, into the oncoming lane, and the entirety of Arrington's vehicle travelled in the oncoming lane for more than two seconds. *See* N.T., 2/14/18, at 7-8, 35. Additionally, Arrington's vehicle was in the wrong lane as he approached the officers' vehicle, which was less than a city block away. *Id.* at 8. Officer Macioce testified that the officers' vehicle would not have been able to continue in their direction of travel had Arrington maintained his vehicle's position in the wrong lane. *Id.* Therefore, we conclude that the officers had probable cause to believe that Arrington was in

violation of Section 3301(a).  ***See Enick***, ***supra***.[2]

In his second claim, Arrington alleges that the officers' initial search of his vehicle was unconstitutional, and any evidence found during the search should have been suppressed at trial.  ***See*** Brief for Appellant at 26-42. Arrington argues that his initial interaction with the officers was an investigatory stop, and the officers lacked reasonable suspicion that he was dangerous and able to gain control of a weapon.  ***Id.*** at 27-42.  Arrington points out that he made no furtive movements, was not overtly nervous, and did not make any actions, or display any characteristics, that would indicate he was armed and dangerous.  ***Id.*** at 31-39.  Arrington states that after he was removed from the vehicle, he was immediately handcuffed, moved to the

---

[2] We acknowledge Arrington's citation to ***Garcia***, 859 A.2d 820, and find it inapposite to Arrington's case. In ***Garcia***, this Court held that a defendant's "momentary and minor" crossing of a traffic line does not give an officer probable cause to conduct a traffic stop **under Section 3309(1)** of the Motor Vehicle Code. ***Id.*** at 823.  Here, Arrington was stopped under Section 3301 of the Motor Vehicle Code.  In ***Enick***, we explained that

> [Section] 3309(1) of the Vehicle Code requires motorists to maintain a single lane "as nearly as practicable." Thus, the statutory language does not foreclose minor deviations.  In comparison, § 3301 provides that "a vehicle shall be driven on the right half of the roadway" subject to exceptions that are not implicated in this case. … Since the language of § 3301 does not include language allowing for unspecified deviations from the rule, we need not analyze whether [the defendant] complied with § 3301 "as nearly as practicable."

***Enick***, 70 A.3d at 847-48 (citations omitted).

rear of his vehicle, out of reach of the passenger compartment, and supervised by Officer Connors. *Id.* at 39-41.

> [I]t is hornbook law that the Fourth Amendment to the United States Constitution[,] as well as Article I, § 8 of the Pennsylvania Constitution[,] protect citizens from unreasonable searches and seizures. Warrantless searches and seizures … are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 … (1967). One such exception, the *Terry* [*v. Ohio*, 392 U.S. 1, 30 (1968),] "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." … *Terry*[, 392 U.S. at 30].

> *Terry* further held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others[,]" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 24…. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 … (1972).

> In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. *United States v. Cortez*, 449 U.S. 411, 417 … (1981). "Based upon that whole picture[,] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417-[18]…. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. The *Terry* totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters.

***Commonwealth v. Simmons***, 17 A.3d 399, 402-03 (Pa. Super. 2011) (some citations and quotation marks omitted; paragraph break and brackets omitted). Our decision is guided by several notable cases from this Court that contain similar factual patterns to the case *sub judice*.

In ***Commonwealth v. Rosa***, 734 A.2d 412 (Pa. Super. 1999), a Philadelphia police officer stopped a vehicle containing three adult males. When the officer pulled the vehicle over, "he observed [one of the men] 'looking back, and moving around, moving forward, and looking back—just moving around a lot.'" ***Id.*** at 413. After approaching the vehicle, he observed, in plain view, two knives, and several crossbow arrows. ***Id.*** The officer directed the men to step out of the car,[3] and discovered two handguns under the backseat of the vehicle. ***Id.***

This Court held that the officer was justified in his search, because (1) the traffic stop occurred late at night; (2) the driver could not produce his driver's license, vehicle registration, and proof of insurance; (3) the vehicle's occupants possessed three knives and several crossbow arrows; and (4) the man in the back seat was "extremely active … as [the officer] approached the vehicle." ***Id.*** at 416.

---

[3] The officer discovered a third knife after the men had exited the vehicle. ***Rosa***, 734 A.2d at 413.

Similarly, we have held that a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon."[4] **Buchert**, 68 A.3d at 916-17; **see also Commonwealth v. Simmons**, 17 A.3d 399, 401 (Pa. Super. 2011) (finding reasonable suspicion where the traffic stop was conducted at night, in a high-drug and high-crime area, and the officer witnessed the defendant make the furtive movement of reaching under his seat and then towards his chest, consistent with concealing a weapon); **In re O.J.**, 958 A.2d 561, 566 (Pa. Super. 2008) (finding reasonable suspicion where the traffic stop occurred at night, the defendant initially failed to stop his vehicle when signaled by police, and the defendant made "rapid and furtive hand movements over the [vehicle's] console," which had been left partially opened); **Commonwealth v. Murray**, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where the traffic stop occurred at night and in a high-narcotics area, the defendant's vehicle had tinted windows, and the defendant made "a lot of movement in the vehicle" as the officer was approaching).

_____

[4] The Court also noted one officer's testimony that the area of the stop was a "high narcotics area," and that the defendant was so nervous that the officer could see the defendant's "heavy breathing and rapid heartbeat." **Commonwealth v. Buchert**, 68 A.3d 911, 912 (Pa. Super. 2013).

In contrast, this Court in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013), found that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared "extremely nervous." *Id.* at 304. The **Cartagena** court noted that there was no testimony indicating that the defendant had made furtive movements, that the stop occurred in a high-crime area, or that the police saw any weapons in the vehicle prior to conducting the search. *Id.* at 304-06; *see also Commonwealth v. Moyer*, 954 A.2d 659, 669-70 (Pa. Super. 2008) (holding that evidence that a vehicle's occupants engaged in furtive movements and appeared nervous was insufficient to establish reasonable suspicion); *Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002) (same).

The circumstances that supported reasonable suspicion in **Rosa**, **Buchert**, **Simmons**, **In re O.J.**, and **Murray** are mostly absent here. The facts before us align more closely with those in **Cartagena**, **Moyer**, and **Reppert**. Although the stop occurred late at night and in a high-crime area, Arrington was able to produce his driver's license and the car's rental agreement; the officers did not observe any weapons in plain view; Arrington did not display extreme nervousness; and Arrington made no furtive movements. Indeed, the sole factors in support of reasonable suspicion were that the stop occurred at night, and in a high-crime neighborhood.

- 10 -

In support of its Order denying Arrington's Motion, the trial court set forth several additional factors which, in its view, supported the officers having reasonable suspicion to search Arrington's vehicle for a weapon. *See* "Findings of Fact and Order of Court," 3/22/18, 6-7. The trial court pointed out that (1) Arrington's vehicle was not in park when the officers approached; (2) Arrington did not immediately comply when the officers asked him to place his vehicle in park; (3) Arrington was "staring around" and was non-responsive to commands; (4) Arrington was "reaching around" in the vehicle in a slow and deliberate manner; and (5) Officer Macioce testified that Arrington's actions were indicative of intoxication or nervousness. *See id.*

We disagree that these factors support reasonable suspicion that Arrington was in possession of a firearm. While Officer Macioce testified that Arrington made some actions that were "consistent with nervousness," he also testified that other actions "were consistent with a DUI," and that "the first thing [he] was thinking about was DUI." N.T., 2/14/18, at 16. Additionally, Officer Macioce testified that Arrington's movements were "slow and deliberate." *Id.* at 23. The Commonwealth presented no evidence that Arrington's movements were sudden, indicative of reaching for a weapon, or "furtive." *See id.* at 11-31. Although Arrington's actions may have indicated that he was nervous, the nature of Arrington's actions does not support a conclusion that he was in possession of a weapon. *See, e.g.*, *Cartagena*, 63 A.3d at 305-06 (stating that "[i]t is the rare person who is not agitated to

some extent when stopped by police, even if the driver is a law-abiding citizen who simply failed to notice or repair a broken taillight or was unaware that he or she was driving above the speed limit. Whether described as nervousness, apprehension, concern or otherwise, forced interaction with a police officer is not an everyday occurrence for the average citizen.").

Moreover, "[w]e are … mindful of the legal standard requiring that we view facts not in isolation but in light of the totality of the circumstances when determining whether the police officers here had reasonable suspicion **to have concern for their safety**." *Cartagena*, 63 A.3d at 304 (emphasis added). Here, Arrington was in handcuffs, positioned at the rear of his vehicle, out of reach of the passenger compartment, and being supervised by Officer Connors, with Officer Macioce nearby. Therefore, Arrington posed no threat to the officers' safety.

Based on the totality of the circumstances, we conclude that the officers lacked reasonable suspicion to conduct a protective weapons search of Arrington and the passenger compartment of his vehicle. **See Simmons**, *supra*. Therefore, the officers' first search was illegal, and the handgun should have been suppressed. **Simmons**, 17 A.3d at 403. Moreover, without this evidence, the officers would not have conducted the second search, and discovered the U.S. currency, drugs, and drug paraphernalia. In accordance with the exclusionary rule, all evidence obtained from this second search of Arrington and his vehicle (*i.e.*, the U.S. currency and stamp bag of heroin

discovered on Arrington, and the handgun, 81 bags of heroin, U.S. currency, digital scale, and four cell phones discovered in Arrington's vehicle) should also have been suppressed. *Id.* Accordingly, we reverse Arrington's judgment of sentence for firearms not to be carried without a license, possession of drug paraphernalia, possession of a controlled substance, and possession with intent to deliver. Further, we order suppression of the U.S. currency and stamp bag of heroin discovered on Arrington, and the handgun, 81 bags of heroin, U.S. currency, digital scale, and four cell phones discovered

in Arrington's vehicle, and remand for further proceedings.[5, 6]

_____

[5] My learned colleague states in the dissent that we failed to address the issue of whether Arrington had a privacy interest in the area searched. As aptly noted in the dissent, since Arrington was charged with a possessory offense, he automatically has standing to challenge suppression of the items seized, but Arrington must also have a reasonable expectation of privacy in the vehicle's contents. ***See Commonwealth v. Viall***, 890 A.2d 419, 421 (Pa. Super. 2005). Nevertheless, we did not address this issue, because it is not properly before us. ***See Commonwealth v. Johnson***, 33 A.3d 122 (Pa. Super. 2011) (stating that "claims not raised in the trial court may not be raised for the first time on appeal.").

At the suppression hearing, the Commonwealth bore the initial burden of production – *i.e.*, the burden of producing evidence that Arrington lacked a protected privacy interest in the vehicle. ***See Commonwealth v. Enimpah***, 106 A.3d 695, 700-01 (Pa. 2014) (holding that before the defendant must prove a privacy interest in the area searched, the Commonwealth must initially satisfy its burden of production by presenting evidence showing that the defendant lacked any protected privacy interest; where the Commonwealth fails to bear this initial burden, the burden never shifts to the defendant to prove his privacy interest).

Here, because the Commonwealth never produced evidence showing that Arrington lacked a protected privacy interest, the burden never shifted to Arrington to rebut that evidence. ***See Enimpah***, ***supra***. To be sure, and as noted in the dissent, the Commonwealth presented evidence that Arrington's vehicle was a rental, and Officer Macioce was not sure who had rented the vehicle. ***See*** N.T., 2/14/18, at 15, 34-35, 37, 39-40. However, Officer Macioce **did not state** that the vehicle was not rented by Arrington, or that Arrington otherwise lacked the authority to operate the vehicle. ***See***, ***e.g.***, ***Commonwealth v. Maldonado***, 14 A.3d 907, 911-12 (Pa. Super. 2012). Nor did the Commonwealth challenge Arrington's privacy interest in the vehicle. ***See Enimpah***, ***supra*** at 701 (stating that "[t]he Commonwealth may concede the privacy interest, choosing to contest only the legality of police conduct; if it does so, the defendant's 'reasonable expectation of privacy' need not be established."). As a result, Arrington's burden of persuasion was never triggered, ***see id.***; this issue was never raised; and it would be improper for us to address it on appeal. ***See Johnson***, ***supra***.

[6] In light of our disposition, we need not address Arrington's third and fourth claims.

Arrington's fifth and sixth issues challenge the sufficiency of the evidence to support each of his convictions.[7] We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Arrington alleges that the evidence was insufficient to support his convictions for disregard traffic lane and failure to keep right. ***See*** Brief for Appellant at 57. In support of this claim, Arrington restates the argument he set forth in his first claim, *i.e.*, that his "momentary and minor" crossing of

_____

[7] We will limit our analysis to Arrington's convictions for the traffic offenses, as we have already reversed the remaining sentences.

- 15 -

the centerline did not constitute a violation of Sections 3301(a) or 3309(4) of the Motor Vehicle Code. *Id.*

Section 3301(a) provides that "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway," except for when one of six enumerated exceptions applies. 75 Pa.C.S.A. § 3301(a). An officer's testimony that the defendant's vehicle crossed the double-yellow centerline into the oncoming lane, and remained there for approximately 2-3 seconds, while another vehicle approached in the oncoming lane, is sufficient to support a conviction under Section 3301(a). *See Enick*, 70 A.3d at 846.

Section 3309(4) provides that "[o]fficial traffic-control devices may be installed prohibiting the changing of lanes on a section of roadway and drivers of vehicles shall obey the directions of every such device." 75 Pa.C.S.A. § 3309(4).

Here, Officer Macioce testified that Arrington's entire vehicle crossed the double-yellow centerline, into the oncoming lane, and remained there for at least two seconds. N.T. (suppression), 2/14/18, at 7-8, 35.[8] Arrington has not alleged that the roadway was of insufficient width, or that his actions complied with one of the six exceptions. Additionally, the solid double-yellow pavement marking is a "traffic control device" that prohibits the changing of

---

[8] The transcript of testimony from the February 14, 2018 suppression hearing was incorporated into the non-jury trial record as Commonwealth Exhibit 4. *See* N.T., 4/12/18, at 7.

- 16 -

lanes. **See** PennDOT, Bureau of Driver Licensing, *Pennsylvania Driver's manual*, https://www.dot.state.pa.us/Public/DVSPubsForms/BDL/BDL%20Manuals/Manuals/PA%20Drivers%20Manual%20By%20Chapter/English/PUB%2095.pdf, page 22. Accordingly, the evidence was sufficient to support Arrington's convictions under Section 3301(a) and 3309(4). **See Enick**, **supra**.

Judgment of sentence affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Nichols joins the opinion.

Judge Bowes files a dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2020