J-A18032-19

2020 PA Super 138

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM ARRINGTON | : | |
| | : | |
| Appellant | : | No. 1117 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 10, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002493-2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

DISSENTING OPINION BY BOWES, J.:　　　　　　　**FILED JUNE 09, 2020**

I join the Majority to the extent that it affirms the trial court's rulings. However, unlike the Majority, I would also affirm the trial court's findings that the protective search of the vehicle, and resulting inventory search, were lawful.  As such, I dissent to the portion of the Majority Opinion that concludes that the handgun recovered, along with any other evidence derived from the later inventory search, should have been suppressed.

First, I disagree with the Majority's decision to reach the substantive suppression issues without first considering whether Appellant had established a reasonable expectation of privacy in the contents of the vehicle.  It is well-established that before we may proceed to a determination of an appellant's substantive suppression claim, we must first discern whether Appellant has established standing to challenge the search and a privacy interest in the area

searched. *See Commonwealth v. Burton*, 973 A.2d 428, 434-35 (Pa.Super.

2009).

Our Supreme Court has emphasized that these are distinct analyses:

While curiously similar, standing and privacy interest are different concepts serving different functions. Standing is a legal interest that empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. It ensures a defendant is asserting a constitutional right of his own. The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated. In essence, while a defendant's standing dictates when a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed – once a defendant has shown standing, he must, in short, have brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.

*See Commonwealth v. Enimpah*, 106 A.3d 695, 698-99 (Pa. 2014)

(citations and quotations omitted).

Since Appellant was charged with a possessory offense, he automatically had standing to challenge the suppression of the items seized. *See Commonwealth v. Viall*, 890 A.2d 419, 421 (Pa.Super. 2005). However, the Commonwealth contends that Appellant failed to establish a legitimate expectation of privacy in the vehicle's contents. *See* Commonwealth's brief at 5. I agree.

A reasonable expectation of privacy exists when an individual exhibits an actual subjective expectation of privacy and that expectation is one that

society is prepared to recognize as legitimate. *See Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa.Super. 2005). In order to discern whether an expectation of privacy is reasonable, the totality of the circumstances must be considered and the societal interests involved must be balanced. *Id*. at 118 ("The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.").

The Commonwealth relies on *Commonwealth v. Maldonado*, 14 A.3d 907 (Pa.Super. 2012), as support for its position that Appellant did not have a reasonable expectation of privacy in the vehicle. *See* Commonwealth's brief at 7. In *Maldonado*, the defendant was pulled over while driving a car owned by his paramour. *Maldonado*, *supra* at 911. Police searched the vehicle and recovered drugs and guns. The defendant challenged the search in a pretrial motion. At the resulting suppression hearing, the Commonwealth adduced evidence that the vehicle was owned by the defendant's girlfriend and that they both lived at the address where the vehicle was registered. *Id*. However, the defendant did not testify or offer any evidence that he had permission to drive the vehicle. *Id.* The suppression court granted the defendant's suppression motion. On appeal we reversed, finding that Appellant had not established a reasonable expectation of privacy in the vehicle since he did not own the vehicle, it was not registered to him, and he had not shown authority to operate it. *Id*. at 911-12.

Here, at the suppression hearing, the Commonwealth established that the automobile was a leased vehicle. *See* N.T. Suppression Hearing, 2/14/18, at 15, 34-35, 37. However, it was never revealed to whom the vehicle was leased. Appellant did not testify or otherwise offer any evidence establishing that he was the lessee of the vehicle or that he had the lessee's permission to operate it. Instead, the sole testimony about the ownership of the car came from Pittsburgh Police Officer Gino Macioce, who explained that the vehicle was a leased car, but that he did not know to whom the vehicle was leased.[1] *Id*. at 39-40.

Accordingly, as in *Maldonado*, I would conclude that Appellant has failed to establish a legally cognizable expectation of privacy in the vehicle. *See*, *Maldonado*, *supra* at 911-12; *see*, *e.g.*, *Commonwealth v. Perea*, 791 A.2d 427, 429 (Pa.Super. 2002) (finding that an appellant had not established a privacy interest in a vehicle where he merely possessed the keys needed to unlock it, without any paperwork to show ownership or any other legitimate connection to it). Since we may affirm on any basis supported by the record, I would affirm the trial court's denial of the suppression motion on

---

[1] In its brief, the Commonwealth correctly points out that although testimony at trial revealed that Appellant had rented the vehicle, we cannot examine evidence beyond the suppression hearing when reviewing a pretrial suppression issue, unless it is established that such evidence was unavailable during the suppression hearing. *See* Commonwealth's brief at 5 n.1. Appellant has leveled no such contention.

- 4 -

the ground that Appellant did not establish a reasonable expectation of privacy in the vehicle and its contents.

Although my proposed disposition would obviate the need to reach the substantive suppression issue addressed by the Majority, I will briefly explain why I also disagree with this portion of my colleagues' analysis. In short, our differing conclusion on the substantive suppression issue stems from the Majority's failure to apply the proper standard of review. *See* Majority Opinion at 4. In its summation, the Majority reviewed the facts elicited at the suppression hearing *de novo*. It is well-settled that where "the Commonwealth prevail[s] before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa.Super. 2017). Therefore, while the trial court's conclusions of law are subject to plenary review, we are bound by the trial court's factual findings when they are supported by the record. ***Id***.

The Majority summarized the factual findings that the suppression court made that led it to determine that the officers were justified in performing a protective sweep of the vehicle as follows:

> In its factual findings, the suppression court credited Officer Macioce's testimony that: (1) the stop occurred in the dark at 2:00 a.m. in a high crime area; (2) Appellant exhibited signs of intoxication and nervousness when he was staring off and failing to comply with the officer's requests and demands; (3) Appellant was observed moving slowly and deliberately inside of the vehicle,

- 5 -

raising concerns that Appellant could have access to a weapon; (4) Appellant's concealed carry permit had been revoked; and (5) that the DUI investigation was ongoing such that officers were going to have to release Appellant from the handcuffs in order for him to do field sobriety testing.

*See* Majority Opinion at 11. However, instead of accepting the foregoing facts as true, and discerning whether the law supported the suppression court's ultimate legal conclusion, the Majority substituted in its own evaluation of the credibility of Officer Macioce's testimony. Specifically, the Majority concluded that Officer Macioce's testimony did not support a finding that Appellant engaged in furtive movements or appeared nervous, facts that the suppression court plainly found when it credited Officer Macioce's testimony. *See* Majority Opinion at 11. Such a conclusion runs counter to our standard of review.

When viewing the evidence through the lens that our standard of review mandates, and applying the legal standard required for a wingspan search as articulated by the Majority, I would find that the protective sweep was legally justified. The stop occurred shortly after midnight in an "extreme high crime area," creating a heightened danger that the officers would not be able to view Appellant if he did reach for a weapon. *See Commonwealth v. Jackson*, 907 A.2d 540, 545 (Pa.Super. 2006) (recognizing that frisks for weapons can be appropriate when police confront a suspect in an area known for guns and violence). Appellant had been driving dangerously and initially failed to comply with basic commands to put his vehicle in park. Appellant also

- 6 -

exhibited nervousness, had a revoked gun permit, and was observed "reaching around" while in the vehicle. This evasive behavior supported the officers' concerns for their safety. *Commonwealth v. Truggles*, 58 A.3d 840, 844 (Pa.Super. 2012) ("Where a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular or multiple, can support a belief that the person has a gun.").

Given the totality of the facts at Officer Macioce's disposal, I agree with the trial court that the officer reasonably believed that a weapon may have been secreted within Appellant's wingspan, such that the resulting search was not unconstitutional. *See, e.g.*, *Commonwealth v. In re O.J.*, 958 A.2d 561, 566 (Pa.Super. 2008) (finding reasonable suspicion where the traffic stop occurred at night, the defendant initially failed to stop his vehicle when signaled by police, made furtive movements inside the vehicle, and was going to be released back to his vehicle).

In arriving at its contrary conclusion, the Majority views as dispositive the fact that, at the time of the protective sweep, Appellant had already been removed from the vehicle and handcuffed. *See* Majority Opinion at 12 ("Arrington was in handcuffs, positioned at the rear of his vehicle, out of reach of the passenger compartment. . . . Therefore, Arrington posed no threat to the officers' safety."). However, reaching such a definitive conclusion based solely on the fact that Appellant had been temporarily removed from the

vehicle is not supported by our precedent or the testimony elicited at the suppression hearing.

It is well-established that a protective search of the interior of a vehicle is not unreasonable simply because the person is under police supervision outside of the vehicle. *See Commonwealth v. Morris*, 644 A.2d 721 (Pa. 1994) (adopting *Michigan v. Long*, 463 U.S. 1032, 1051 (1983) (rejecting the contention that a protective search of the interior of a car is unreasonable where the person is under police supervision outside of the vehicle)). Instead, a proper analysis focuses on whether a danger remains that the suspect could access weapons inside of the vehicle. *See*, *e.g. In re O.J.*, *supra* at 563 ("Even though Appellee and the passenger were secure at that point, a brief search of the car was necessary because Appellee and the passenger were not going to be placed under arrest for the Motor Vehicle Code violations but were going to be allowed to return to their car."); *see also Long*, *supra* at 1051 (upholding a protective sweep where the police intended to release the suspect from his handcuffs, because once the suspect reentered his automobile, he would regain access to any weapons that might have been located in the vehicle).

Here, the officers intended to remove the handcuffs from Appellant so that he could engage in field sobriety testing. N.T. Suppression Hearing, 2/14/18, at 40. Further, Officer Macioce explained that, if Appellant had succeeded on the field sobriety testing, he would have been released back to

his vehicle because he would have only been charged with a Motor Vehicle Code violation. *Id*. Therefore, the danger that Appellant could have accessed a weapon secreted inside the vehicle had not been extinguished at the time that the officers conducted the protective sweep.

Based on the foregoing discussion, I would affirm the trial court's denial of Appellant's suppression motion and respectfully dissent from the Majority's decision to reverse the judgment of sentence on Appellant's firearms not to be carried without a license, possession of drug paraphernalia, possession of a controlled substance, and possession with intent to deliver convictions.